UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐

OLGA MONTES,

                                Plaintiff,

            -against-

ANDREW A. SAUL,[1]
Commissioner of Social Security

                                Defendant.
‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐

19cv3039 (DF)

**MEMORANDUM
AND ORDER**

**DEBRA FREEMAN, United States Magistrate Judge:**

In this Social Security action, which is before this Court on consent pursuant to 28 U.S.C.

§ 636(c), plaintiff Olga Montes ("Plaintiff") seeks review of the final decision of SSA

Commissioner Andrew A. Saul ("Defendant" or the "Commissioner") (*see supra*, at n.1), denying

Plaintiff Social Security Disability Insurance ("SSDI") benefits and Supplemental Security

Income ("SSI") benefits under the Social Security Act (the "Act"), on the ground that, for the

relevant period, Plaintiff's impairments did not constitute a disability under the Act.  Currently

before the Court is Plaintiff's motion, made pursuant to Rule 12(c) of the Federal Rules of Civil

Procedure, for judgment on the pleadings, wherein she requests that the case be remanded for a

new hearing before a properly appointed ALJ, or, alternatively, for the Court to reverse the

Commissioner's decision and award her benefits.  (Dkt. 18.)[2]  Also before the Court is

---

[1]  As Andrew M. Saul has now been appointed Commissioner of the Social Security
Administration ("SSA"), the Court hereby orders that, pursuant to Rule 25(d) of the Federal
Rules of Civil Procedure, he be substituted for named defendant Nancy A. Berryhill, who, at the
time the suit was filed, was serving as the Acting Commissioner of the SSA.

[2]  Although the Court's Electronic Court Filing ("ECF") system denotes Dkt. 17 as
Plaintiff's Rule 12(c) motion for judgment on the pleadings, it appears that, through a scanning
error, Plaintiff filed her memorandum of law in support of the motion at Dkt. 17 (*see* Plaintiff's

Defendant's cross-motion, made pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, for judgment on the pleadings affirming the Commissioner's decision.  (Dkt. 25.)  For the reasons set forth below, Plaintiff's motion (Dkt. 18) is granted to the extent it seeks remand for further administrative proceedings.  Defendant's cross-motion (Dkt. 25) is denied.

## BACKGROUND

### A.  Administrative History[3]

Plaintiff filed an application for SSDI benefits on November 13, 2015 and for SSI benefits on December 16, 2015, alleging that she became disabled as of November 4, 2015, as a result of her conditions of severe cervical spinal stenosis, anxiety, depression, chronic migraines, and arthritis.  (R. at 192-201, 239.)  After her claim was initially denied on January 12, 2016, Plaintiff requested a hearing before an administrative law judge ("ALJ").  (*Id.* at 127-36.)  On December 21, 2017, Plaintiff, represented by counsel, testified at a hearing held before ALJ Vincent Cascio (the "Hearing").  (*Id.* at 60-95.)  At the Hearing, the ALJ also heard testimony from Ray Berger, a vocational expert.  (*Id.* at 85-91.)

In a decision issued on April 11, 2018 (*id.* at 32-58), ALJ Cascio found that, although Plaintiff suffered from the severe impairments of "status post cervical fusion surgery with hardware," "degenerative changes in the lumbar spine," migraine headaches, major depressive disorder, generalized anxiety disorder, and panic disorder with agoraphobia (*id.* at 38), along with the nonsevere impairments of asthma and obesity (*id.* at 38-39), Plaintiff's impairments did not meet or equal the criteria of any impairment listed as disabling in the relevant regulations (*id.*

---

Memorandum of Law, dated Sept. 9, 2019 ("Pl. Mem.") (Dkt. 17)), while she filed her Notice of Motion at Dkt. 18 (*see* Notice of Motion, dated Sept. 9, 2019 (Dkt. 18)).

[3] The administrative history summarized herein is derived from the SSA Administrative Record (Dkt. 14) (referred to herein as "R." or the "Record").

at 39).  The ALJ further found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with certain limitations, and that, as jobs allowing for such limitations were available in sufficient numbers in the national economy, Plaintiff was not disabled under the Act.  (*Id*. at 41, 52.)  Following the ALJ's decision, Plaintiff sought to appeal to the Appeals Council, submitting reasons why she disagreed with the ALJ's decision, along with supplemental medical evidence.  (*Id.* at 8-31.)  On June 18, 2018, the Appeals Council notified Plaintiff that it had received her request for review (*id.* at 6-7), and, on February 21, 2019, it denied that request, finding that Plaintiff's reasons for seeking review did not provide a basis for changing the ALJ's decision (*id*. at 1-5).  Thereafter, the ALJ's decision became the final decision of the Commissioner.

      **B.**      **The Current Action and Pending Motions**

Represented by counsel, Plaintiff timely filed the Complaint in this action on April 5, 2019, challenging the decision of the Commissioner denying her SSDI and SSI benefits.  (*See* Complaint, dated Apr. 5, 2019 ("Compl.") (Dkt. 1).)  In her Complaint, Plaintiff claimed that, under the Supreme Court's recent decision *Lucia v. S.E.C.*, _ U.S. _, 138 S. Ct. 2044 (June 21, 2018) ("*Lucia*"), the ALJ who had determined her claim was not properly appointed at the time the Hearing was held or when his decision was rendered, and, thus, the matter should be remanded for a new hearing before a properly appointed ALJ.  (Compl. ¶ 5.)  In addition, Plaintiff maintained that she was entitled to receive both SSDI and SSI benefits due to her disability, and that the ALJ's decision, as affirmed by the Appeals Council, was legally erroneous and not supported by substantial evidence.  (*Id.* ¶ 4.)

On September 9, 2019, Plaintiff filed a motion for judgment on the pleadings in her favor, seeking remand of the case for a new hearing before a properly appointed ALJ, or,

alternatively, for reversal of the Commissioner's decision and an award of benefits (Dkt. 18),

along with a memorandum of law in support (*see generally* Pl. Mem.).  In her memorandum,

Plaintiff expands upon the points raised in her Complaint, including that, under *Lucia*,

ALJ Cascio was not a properly appointed official at the time of the Hearing or at the time he

issued the decision denying Plaintiff's claims for disability benefits.  (*See id.*, at 1, 13-18.)[4]

Plaintiff explains that, in *Lucia*, the Supreme Court held that the ALJs of the Securities and

Exchange Commission ("SEC") are inferior officers who must be appointed consistently with the

Appointments Clause of the United States Constitution, in part "because they hold 'continuing

office[s] established by law' and exercise 'significant discretion when carrying out . . . important

functions.'"  (*Id.*, at 13 (quoting *Lucia*, 138 S. Ct. at 2053).)[5]  According to Plaintiff, under the

reasoning of *Lucia*, ALJs of the SSA are likewise inferior officers who must be, but, at the

relevant time, had not been, appointed consistently with the Appointments Clause.  (*See id*.)

Plaintiff noted that, "[s]ince *Lucia*, [the] SSA has uniformly conceded that its ALJs . . . are

inferior officers subject to . . . the Constitution's Appointments Clause" (*id.*), and that, in the

---

[4] As noted above, Plaintiff also raised alternative arguments that ALJ Cascio's decision rested on errors of law; in this regard, Plaintiff specifically argued, *inter alia*, that the ALJ failed to apply the so-called "treating physician rule" properly, and that his RFC determination was not supported by substantial evidence in the record (*see* Pl. Mem., at 18-23).

[5] The Appointments Clause of the United States Constitution provides that the President:

> shall nominate, and by and with the Advice and Consent of the
> Senate, shall appoint Ambassadors, other public Ministers and
> Consuls, Judges of the supreme Court, and all other Officers of the
> United States, whose Appointments are not herein otherwise
> provided for, and which shall be established by Law: but the
> Congress may by Law vest the Appointment of such inferior
> Officers, as they think proper, in the President alone, in the Courts
> of Law, or in the Heads of Departments.

U.S. Const. Art. II § 2, cl. 2.

wake of that decision, on July 16, 2018, the Acting Commissioner of Social Security ratified the appointments of the then-sitting ALJs of the SSA and approved those appointments as her own (*see id.*, at 13-14).[6]  Based on all of this, Plaintiff contends that, in this case, ALJ Cascio's hiring, which occurred prior to July 16, 2018, "was constitutionally defective, as was his decision [on April 11, 2018]; as both came before he was 'properly' reappointed."  (*Id.*, at 14.)  Plaintiff thus seeks the same remedy awarded in *Lucia*:  she argues that, to cure the error, the case should be remanded for a new hearing before a different ALJ who has been properly appointed under the Constitution.  (*See id.*)

On December 16, 2019, Defendant opposed Plaintiff's motion and filed a cross-motion for judgment on the pleadings in favor of the Commissioner (Dkt. 25), together with a supporting memorandum of law (*see* Memorandum of Law in Opposition to Plaintiff's Motion for Judgment on the Pleadings and in Support of the Commissioner's Cross-Motion or Judgment on the Pleadings, dated Dec. 16, 2019 ("Def. Mem.") (Dkt. 26)).  In opposition to Plaintiff's motion and in support of the cross-motion, Defendant asserts, *inter alia*, that at no point in the administrative process did Plaintiff ever contend that ALJ Cascio was an inferior officer improperly appointed under the Appointments Clause without authority to decide Plaintiff's claims.  (*See id.*, at 29.)  While Defendant does not contest the merits of Plaintiff's Appointments Clause challenge under *Lucia* (*see id.*, at 29 n.4 ("Defendant does not argue that SSA ALJs are employees rather than inferior officers")), Defendant nevertheless argues that Plaintiff's failure to raise that issue during the administrative process forfeited such a claim (*see id.*, at 29-35)  In making this argument, Defendant maintains that "requiring a claimant to present an Appointments Clause

---

[6] *See* Social Security Ruling 19-1p; Titles II and XVI: Effect of the Decision in Lucia v. Securities and Exchange Commission (SEC) On Cases Pending at the Appeals Council ("SSR 19-1p"), 84 F.R. 9582-02, 9583 (March 15, 2019).

challenge to the agency to preserve it for judicial review . . . draws support from the plain language of SSA's regulations . . . [which] . . . require a claimant to raise all issues – including constitutional issues – to the agency at the earliest possible juncture."  (*Id.*, at 33 (citing, *inter alia*, 20 C.F.R. §§ 404.933(a)(2); 416.1433(a)(3)).)  Moreover, Defendant contends that "the doctrines of forfeiture and waiver serve important efficiency interests, particularly in the context of [the] SSA, which issues hundreds of thousands of decisions each year."  (*Id.*, at 34.)  On this point, Defendant asserts that "[r]emanding to [the] SSA thousands of previously decided claims where the claimant failed to raise any challenge to the ALJ's appointment would further burden an already-stressed system."  (*Id.*)  Stressing that "[the] SSA must ensure that its adjudicative system is both fair and efficient for all claimants, including those waiting for a hearing," Defendant argues that "the Court should apply the Supreme Court's repeated instructions that a litigant must have raised a timely challenge in proceedings before the agency."  (*Id.*, at 34-35 (citing *Lucia*, 138 S. Ct. at 2055; *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952)).)

In her reply brief, Plaintiff disputes Defendant's contention that her Appointments Clause challenge has been forfeited or waived, arguing instead that (1) it is incorrect to say that a failure to raise an Appointments Clause challenge at the ALJ level forfeits the issue, given that the petitioner in *Lucia* had also failed to raise that challenge before an ALJ; and (2) more broadly, nothing in the SSA statute, the relevant regulations, or the non-adversarial nature of the SSA administrative scheme would support a judicially imposed requirement of issue exhaustion in this circumstance.  (*See generally* Plaintiff's Reply Memorandum of Law, dated Dec. 19, 2019 ("Pl. Reply Mem.") (Dkt. 27).)

## DISCUSSION

## I.   PLAINTIFF'S APPOINTMENTS CLAUSE CHALLENGE

Plaintiff's first challenge to the ALJ's decision is a challenge to his authority under

*Lucia*, and it is appropriate that the Court address that issue as a threshold matter.  As noted

above, Defendant does not contest Plaintiff's assertion that, under *Lucia*, SSA ALJs, like SEC

ALJs, are "inferior officers" who are subject to appointment pursuant to the Constitution's

Appointments Clause.  (Def. Mem., at 29 n.4.)  Indeed, as a general matter, "the [SSA has]

confirmed that it would not dispute that ALJs were not appointed properly under the Constitution

prior to July 16, 2018."  *Velez v. Berryhill*, No. 18cv8603 (PGG) (KNF), 2020 WL 2950973,

at *2 (S.D.N.Y. Feb. 24, 2020) ("*Velez*"), *report and recommendation adopted sub nom Velez v.*

*Saul*, No. 18cv8603 (PGG) (KNF), 2020 WL 1467183 (S.D.N.Y. Mar. 26, 2020).  Further, it is

undisputed in this case that ALJ Cascio conducted the Hearing on December 21, 2017 and issued

his decision on April 11, 2018.  (R. at 32-58, 60-95.)  Consequently, as the ALJ in this case

conducted the Hearing and issued his decision prior to being appointed on July 16, 2018, it

would appear, at first glance, that the case must be remanded for a new hearing before a different

ALJ who has been appointed properly under the Constitution.  *See Lucia* 138 S. Ct. at 2055 ("To

cure the constitutional error, another ALJ . . . must hold the new hearing.").

Nonetheless, Defendant argues that remand is inappropriate because Plaintiff first raised

her Appointments Clause challenge in this Court, rather than in the underlying administrative

proceedings.  As to this contention, the Court notes at the outset that, with respect to "issue

exhaustion," Defendant cannot persuasively argue that Plaintiff's failure to raise an

Appointments Clause challenge at the *Appeals Council* level resulted in a forfeiture of that issue

because the Supreme Court has already made plain that issue exhaustion at that level is not

required.  *See Sims v. Apfel*, 530 U.S. 103, 112 (2000) ("[A] judicially created issue-exhaustion requirement is inappropriate.  Claimants who exhaust administrative remedies need not also exhaust issues in a request for review by the *Appeals Council* in order to preserve judicial review of those issues." (emphasis added).)

Thus, the narrowed question before the Court is whether Plaintiff needed to raise her Appointments Clause challenge *before the ALJ* in order to preserve that challenge for judicial review.  The Supreme Court in *Sims* left this question open,[7] and the Second Circuit Court of Appeals has not yet addressed it, although an appeal concerning this issue is pending.  *See Pichardo Suarez v. Berryhill*, No. 20-1358 (2d Cir. Appellant's Br. filed Aug. 13, 2020).  To resolve this question here, the Court will, in turn, identify the most relevant precedent, discuss the SSA statute and regulations, and then – in light of the applicable case law and administrative

---

[7] Defendant notes that, in *Lucia*, the Supreme Court stated that "a party 'who makes a *timely* challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to relief.'"  (Def. Mem., at 29 (quoting *Lucia*, 138 S. Ct. at 2055 (emphasis added)).)  According to Defendant, this statement effectively resolves the issue left open in *Sims* and requires the Court to hold that Plaintiff's failure to assert a challenge to the ALJ's appointment before the SSA during the administrative process forfeited her Appointments Clause claim.  (*See id*.)  As Plaintiff points out, however, Defendant "does not address the fact that the Petitioner in *Lucia* had never raised an Appointments Clause challenge at the ALJ level." (Pl. Reply Mem., at 8.)  As Plaintiff explains, "[i]f [Defendant] were correct, then the Petitioner in *Lucia* forfeited his Appointments Clause challenge as well.  But that is not how the Supreme Court ruled in *Lucia*."  (*Id*.)  For this reason, the Court agrees with Plaintiff that *Lucia* itself should not be read as closing the door to Plaintiff's right to raise an Appointments Clause challenge before the Court.  *See San Filippo v. Berryhill*, No. 18cv10156 (VSB) (KNF), 2020 WL 62039, at *3 (S.D.N.Y. Jan. 3, 2020) ("It is impossible to say that a failure to raise an Appointments Clause challenge at the ALJ level forfeits the issue when the petitioner in *Lucia* had also failed to raise that challenge at the ALJ level."), *report and recommendation adopted sub nom Filippo v. Saul*, No. 18cv10156 (VSB) (KNF), 2020 WL 5229681 (S.D.N.Y. Sept. 1, 2020).

scheme – examine the doctrine of judicially-imposed issue exhaustion and consider whether the doctrine should be invoked in this case.

### A.    **Relevant Precedent**

To date, four United States Courts of Appeal have considered whether the failure to raise an ALJ Appointments Clause challenge during the SSA administrative process (*i.e.,* before the ALJ and/or the Appeals Council) will preclude a claimant's pursuit of such a challenge in subsequent judicial proceedings, and those Circuits have split on the question.  First, the Third Circuit Court of Appeals held that both the nature of Appointments Clause claims and the characteristics of SSA administrative review weigh against imposing an issue-exhaustion requirement before claimants could challenge an SSA ALJ's lack of constitutional appointment under the Appointments Clause.  *Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148, 155-56 (3d Cir. Jan. 23, 2020) ("*Cirko*").  The Tenth and Eighth Circuits then reached the opposite conclusion, holding that "Social Security disability claimants waive Appointments Clause challenges that they failed to raise in their administrative proceedings."  *Carr v. Comm'r, SSA*, 961 F.3d 1267, 1268 (10th Cir. June 15, 2020) ("*Carr*"); *Davis v. Saul*, 963 F.3d 790 (8th Cir. June 26, 2020) ("*Davis*").[8]  Yet, most recently, the Sixth Circuit in *Ramsey v. Comm'r of Soc. Sec.*, 973 F.3d 537 (6th Cir. Sept. 1, 2020), sided with the Third Circuit and held that the characteristics of the SSA administrative scheme and the nature of the claim weigh against implying an exhaustion requirement before claimants could challenge an SSA ALJ's lack of constitutional appointment.

The district courts that have grappled with this issue have also been divided.  The majority have adopted the position that a claimant waives her Appointments Clause challenge by

---

[8] On November 9, 2020, the Supreme Court granted petitions for writs of certiorari in *Carr* and *Davis*.  *See Carr v. Saul*, 19-1442, 2020 WL 6551771 (Nov. 9, 2020); *Davis v. Saul*, 20-105, 2020 WL 6551772 (Nov. 9, 2020).

not raising it at the administrative level.  *See, e.g., Karen S. v. Comm'r of Soc. Sec.*, No. 2:18-cv-00099, 2020 WL 4670911 (D. Vt. Aug. 11, 2020); *Vazquez v. Comm'r of Soc. Sec.*,19-CV-1613 (KAM), 2020 WL 3868787 (E.D.N.Y. July 8, 2020); *Iris R. v. Saul*, 1:19-CV-1165 (MAD), 2020 WL 2475824 (N.D.N.Y. May 13, 2020); *Bonilla-Bukhari v. Berryhill*, 357 F. Supp. 3d 341 (S.D.N.Y. Mar. 4, 2019) (summarizing cases following *Lucia* but prior to *Cirko*).  Nonetheless, a smaller but gradually growing number of district courts in and outside of this Circuit have concluded – like the courts in *Cirko* and *Ramsey* – that exhaustion of Appointments Clause challenges in this particular administrative scheme is not required.  *See, e.g., Filippo v. Saul,* No. 18cv10156 (VSB) (KNF), 2020 WL 5229681 (S.D.N.Y. Sept. 1, 2020) ("*Filippo*") (adopting report and recommendation); *Velez*, 2020 WL 2950973; *Blauvelt v. Saul*, No. 3:19-cv-01446 (KAD), 2020 WL 4432911 (D. Conn. July 31, 2020); *Suarez v. Saul*, No. 3:19-cv-00173 (JAM), 2020 WL 913809 (D. Conn. Feb. 26, 2020); *see also Brunson v. Saul*, No. 18-5562, 2019 WL 3413520 (E.D. Pa. July 26, 2019); *McWilliams v. Berryhill*, No. 18-5180, 2019 WL 2615750 (E.D. Pa. June 26, 2019), *reconsideration denied sub nom McWilliams v. Saul*, No. 18-5180, 2020 WL 6336125 (E.D. Pa. Aug. 31, 2020).

## B.    The SSA Statute and Regulatory Scheme

Exhaustion (meaning "issue exhaustion")[9] can be imposed legislatively or as a matter of judicial discretion.  *Washington v. Barr*, 925 F.3d 109, 116 (2d Cir. 2019).  Exhaustion is

---

[9] To clarify, when this Court uses the term "exhaustion" in its discussion herein, it is referring to "issue exhaustion," *i.e.*, a requirement that claimants "raise specific issues . . . to reserve them for review in federal court."  *Sims*, 530 U.S. at 113 (O'Connor, J., concurring in part and concurring in the judgment).  Nothing in this Memorandum & Order should be construed to suggest that SSA claimants are relieved from the administrative-exhaustion requirement of 20 C.F.R. §§ 404.900(b), 416.1400(b), which "warn[s] claimants that completely failing" to pursue their claims for benefits through the agency process "will forfeit the right to seek judicial review."  *Sims*, 530 U.S. at 113.

required when it is mandated by Congress, "'[b]ut [even] where Congress has not clearly required exhaustion,' a court may still impose it as an act of 'sound judicial discretion.'"  *Id.* (quoting *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992), *superseded by statute as recognized in Porter v. Nussle*, 534 U.S. 516 (2002)).

With specific respect to administrative issue exhaustion, the Supreme Court in *Sims* stated that the "requirements of administrative issue exhaustion are largely creatures of statute," and, "[s]imilarly, [that] it is common for an agency's regulations to require issue exhaustion." *Sims*, 530 U.S. at 107-08.  Here, however, the Court disagrees with Defendant's assertion that "requiring a claimant to present an Appointments Clause challenge to the [SSA] . . . draws support from the plain language of [the] SSA's regulations."  (Def. Mem., at 33.)

Defendant first points to the SSA regulations requiring "[t]he claimant [to] identify all objections at the earliest possible juncture."  (*Id.* (citing 20 C.F.R. §§ 404.933(a)(2) (relating to SSDI), 416.1433(a)(3) (same with respect to SSI)).  While the Court accepts that these "SSA regulations are designed to facilitate the prompt and efficient identification of issues for administrative adjudication," *Blauvelt*, 2020 WL 4432911, at *3, these particular regulations only "govern[] how a claimant requests an initial hearing before an ALJ," *Ramsey*, 973 F.3d at 541 n.2.  In other words, these regulations' "statement that a claimant 'should' include in her request 'the reasons [she] disagree[s] with the *previous* determination or decision' concerns the [SSA's] initial decision and is not a directive that a claimant should *prospectively* argue against the legitimacy of an as-yet-unassigned ALJ's appointment."  *Id.* (emphasis in original); *accord Filippo*, 2020 WL 5229681, at *3; *Blauvelt*, 2020 WL 4432911, at *3.

Next, Defendant refers to 20 C.F.R. §§ 404.940, 416.1440 – parallel regulations in the SSDI and SSI contexts that deal with the recusal of an ALJ "if he or she is prejudiced or partial

with respect to any party or has any interest in the matter pending for decision."  20 C.F.R. §§ 404.940, 416.1440.  This recusal provision is not one "that requires claimants to exhaust a constitutional Appointments Clause challenge at the ALJ level."  *Filippo*, 2020 WL 5229681, at *3.  Rather, these regulations "deal with the disqualification of ALJs and [they] are plainly directed at allegations of bias or special interest, not to allegations that the hearing officer has been appointed in a constitutionally infirm manner."  *Ramsey*, 973 F.3d at 541 n.2.  Indeed, as the Honorable Vernon S. Broderick of this District recently opined:  "Contrary to the Tenth Circuit's comment in *Carr*, this provision deals not with an ALJ's 'authority,' 961 F.3d at 1275, to hear a case, but serves to protect claimants from an ALJ's 'bias.'"  *Filippo*, 2020 WL 5229681, at *3 (citing *Bolognese v. Sebelius*, 339 F. App'x 40, 41 (2d Cir. 2009) (summary order) (referring to 20 C.F.R. § 404.940 claims as "[b]ias claims")).  Thus, again, the Court is not persuaded by Defendant's assertion that the SSA regulations prescribe issue exhaustion here.

Furthermore, SSR 19-1p (the Social Security Ruling issued on March 15, 2019, regarding the effect of *Lucia* on SSA ALJs) states that the SSA "interpret[s] . . . challenges to the ALJ's authority to hear and decide a claim, based on the Supreme Court's decision in *Lucia*, as raising 'a *broad policy or procedural issue* that may affect the general public interest' within the meaning of [the SSA's] regulations," and that "[c]hallenges to an ALJ's authority to decide a claim may raise a *broadly applicable procedural issue* independent of the merits of the individual claim for benefits – that is, whether the ALJ who presided over the claimant's hearing was properly appointed under the Appointments Clause of the Constitution."  84 Fed. Reg. at 9583 (emphasis added).  Although the SSA regulations provide that claimants must "notify the [ALJs] in writing at the earliest possible opportunity" if they "object to the issues to be decided at the hearing," 20 C.F.R. §§ 404.939, 416.1439, and that claimants may raise new issues at the

hearing, *see id.* §§ 404.946(b), 416.1446(b), Defendant has not directed the Court to *any* SSA

regulation that "require[s] claimants to present, or even gives claimants the opportunity to

present, 'broad policy or procedural issues' during an ALJ hearing." *Filippo*, 2020 WL

5229681, at *3.

Presumably, Defendant has not pointed out any such regulation because there is none,

and, indeed, the Court notes that, since Defendant filed its cross-motion and opposition, the

Commissioner has conceded before the Third, Tenth, and Sixth Circuits that "there is no

statutory or regulatory exhaustion requirement that governs SSA proceedings." *Cirko*, 948 F.3d

at 153; *see also Carr*, 961 F.3d at 1270 ("The Commissioner does not argue that a statute or

regulation requires issue exhaustion in the SSA context."); *Ramsey*, 973 F.3d at 541 ("The

Commissioner concedes that there are no statutory or regulatory exhaustion requirements

governing Social Security proceedings.").

Accordingly, to the extent Defendant argues that the "plain language" of the SSA

regulations prescribe an exhaustion requirement for a claimant's Appointment Clause claim

(Def. Mem., at 33), that contention must be rejected, *see Blauvelt*, 2020 WL 4432911, at *3

("Nowhere . . . do [SSA regulations] specify that an issue is forfeited for purposes of judicial

review if it is not raised before or during the claimant's hearing.  As the Supreme Court

acknowledged [20] years ago, the 'SSA regulations do not require issue exhaustion.'. . . '[A]nd

in the 20 years since the *Sims* decision, the [SSA] has not enacted any regulation requiring issue

exhaustion.' *Suarez*, 2020 WL 913809, at *4. . . . Nor has Congress enacted an exhaustion

provision."); *McWilliams*, 2019 WL 2615750, at *8 ("No matter how tortured the reading, the

SSA regulations fail to squarely address [exhaustion].").

C.     **Judicially Imposed Issue Exhaustion**

Even in the absence of a statute or regulation dictating issue exhaustion, courts have the

discretion to impose such a requirement.  *See Sims*, 530 U.S. at 108-09.  "The basis for a

judicially imposed issue-exhaustion requirement is an analogy to the rule that appellate courts

will not consider arguments not raised before trial courts."  *Id.*  Further, "courts require

administrative issue exhaustion as a general rule because it is usually appropriate under an

agency's practice for contestants in an adversary proceeding before it to develop fully all issues

there."  *Id.* at 109 (internal quotation marks and citation omitted).

"In determining whether exhaustion is required, federal courts must balance the interest

of the individual in retaining prompt access to a federal judicial forum against countervailing

institutional interests favoring exhaustion."  *McCarthy*, 503 U.S. at 146.  This inquiry is

"intensely practical . . . because attention is directed to both the nature of the claim presented and

the characteristics of the particular administrative procedure provided."  *Id.* (internal quotation

marks and citations omitted); *see Smith v. Berryhill*, 139 S. Ct. 1765, 1776 (2019) ("'[T]he

doctrine of administrative exhaustion should be applied with a regard for the particular

administrative scheme at issue.'" (quoting *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975))).

Where a plaintiff's claim involves "'one of those rare cases' . . . that merits excusing forfeiture,"

the court will not impose an issue exhaustion requirement to an Appointments Clause challenge.

*Gonnella v. Sec & Exch. Comm'n*, 954 F.3d 536, 546 (2d Cir. 2020) (quoting *Freytag v.*

*Comm'r*, 501 U.S. 868, 879 (1991)).[10]

---

[10] In *Gonnella v. Sec. & Exch. Comm'n*, the Second Circuit joined the Ninth and Tenth
Circuits in holding "that a litigant who does not object to the constitutionality of an ALJ at any
point during the *SEC proceedings* forfeits that challenge." 954 F.3d at 544 (emphasis added).
Like other district courts in this Circuit, this Court finds that the holding in *Gonnella* does not
control in this particular context because it involved a wholly different administrative scheme –

In *Cirko*, the Third Circuit held that exhaustion is not necessary for SSA claimants to obtain federal court review of an Appointments Clause challenge. *See* 948 F.3d at 152. In balancing individual and institutional interests pursuant to *McCarthy*, the Third Circuit observed that the nature of Appointments Clause claims is that they do not call upon the SSA's administrative expertise, but rather implicate constitutional interests that promote "political accountability and neutrality" as a means of safeguarding "individual liberty," and are thus "claims for which a hearing on the merits is favored." *Cirko*, 948 F.3d at 153-55 (internal quotation marks and citations omitted). With specific regard to SSA proceedings, the *Cirko* court cited "two unusual features of the SSA review process" that were discussed in *Sims*. *Id.* at 155. First, in determining that claimants need not exhaust an issue before the Appeals Council to

the SEC's administrative process. *See Filippo*, 2020 WL 5229681, at *5 n.5; *Blauvelt*, 2020 WL 4432911, at *6 n.4. In *Gonnella*, the Second Circuit relied on its earlier decision in *Tilton v. SEC*, 824 F.3d 276 (2d Cir. 2016), in which it had "held that, '[b]y enacting the SEC's comprehensive scheme of administrative and judicial review, Congress implicitly precluded federal district court jurisdiction over [an] appellant['s] constitutional [Appointments Clause] challenge' prior to review by an ALJ and the [SEC]." *Gonnella*, 954 F.3d at 545-46 (quoting *Tilton*, 824 F.3d at 279). In *Tilton*, however, the court had emphasized that "appellants [would] have access to meaningful judicial review of their Appointments Clause claim through administrative channels," *Tilton*, 824 F.3d at 286. In comparison, as of the time that the ALJ issued his decision in this case, the SSA *itself* had made clear that it was not in a position to provide meaningful review of Appointments Clause challenges. *See* Soc. Sec. Admin., EM-18003: Important Information Regarding Possible Challenges to the Appointment of Administrative Law Judges in SSA's Administrative Process (effective Jan. 30, 2018); *see also Filippo*, 2020 WL 5229681, at *5 n.5; *compare Gonnella*, 954 F.3d at 546 (finding the opposite to be true in the SEC context). Moreover, in contrast with SSA administrative proceedings, which are non-adversarial, "[a]dministrative proceedings before the SEC are unquestionably adversarial[,] and the outcomes of those proceedings can include the imposition of significant civil penalties to include fines and industry bans." *Blauvelt*, 2020 WL 4432911, at *6 n.4 (citations omitted); *see Gonnella*, 954 F.3d at 550 (describing the SEC's regulatory authority to impose penalties). Thus, unlike SSA ALJs, who perform non-adversarial, inquisitorial functions, the SEC ALJs in *Gonnella* essentially oversaw "adversarial proceedings," with the authority "'comparable to' that of a federal district judge conducting a bench trial." *Lucia*, 138 S. Ct. at 2049. This difference in administrative schemes matters when the Court must decide whether to judicially impose an issue exhaustion requirement. *See Smith*, 139 S. Ct. at 1776; *see also* Discussion, *infra*, at Section I(C).

obtain judicial review, Justice O'Connor's controlling concurring opinion[11] "emphasized that[,] because no SSA regulations required exhaustion to the Appeals Council, imposing an 'additional requirement[]' of exhaustion would penalize claimants who did 'everything that the agency asked.'"  *Id.* at 155 & n.4 (quoting *Sims*, 530 U.S. at 114 (O'Connor, J., concurring in part and concurring in judgment) (brackets omitted)).  Second, the *Cirko* court considered that, as also discussed in *Sims*, the "inquisitorial nature" of SSA hearings weakens the need for issue exhaustion, because SSA ALJs do not rely upon claimants to develop the issues in the same way they would in adversarial proceedings.  *Id.* at 155-56 (citing *Sims*, 530 U.S. at 109-10). The court in *Cirko* reasoned that these aspects of SSA administrative proceedings, which militated against applying an exhaustion requirement at the Appeals Council in *Sims*, were equally applicable to the question of whether Appointments Clause claims must be raised before an SSA ALJ.  *Id.* at 156.

In *Cirko*, the Third Circuit ultimately determined that exhaustion would create an undue burden on claimants' strong individual interests in enforcing the Appointments Clause, given that the SSA's administrative system largely vested responsibility for developing issues in the ALJs, not claimants – many of whom are unrepresented.  *See id.* at 156-57.  According to *Cirko*, "[r]equiring exhaustion" would "upend this arrangement by forcing claimants – despite the informal, non-adversarial nature of the review process – to root out a constitutional claim even beyond the power of the agency to remedy, or alternatively risk forfeiture."  *Id.* at 157.  By contrast, the *Cirko* court determined that the countervailing institutional interests in favor of

---

[11] Under the rule of *Marks v. United States*, 430 U.S. 188, 193-94 (1977) (holding that the narrowest opinion of a fragmented Court controls), Justice O'Connor's analysis in *Sims* controls, *see Sims*, 530 U.S. at 113 (O'Connor, J., concurring in part and concurring in the judgment (joining Parts I and II-A of plurality opinion)).

16

exhaustion were largely inapplicable because an Appointments Clause challenge is not one that calls for the SSA to exercise its administrative expertise, nor is the SSA equipped to provide effective relief. *See id.* at 158. According to the Third Circuit, "[a]t neither the trial nor the appellate levels could the SSA's [ALJs] cure the constitutionality of their own appointments, whether by reappointing themselves, . . . or by transferring the case to a constitutionally appointed ALJ." *Id.* (internal citations omitted).

Thereafter, the Tenth Circuit in *Carr* disagreed with *Cirko* and imposed an exhaustion requirement for Appointments Clause challenges to the SSA's ALJs. 961 F.3d at 1274. The Tenth Circuit hinged its analysis in large part on its disagreement with the district court's reliance on *Sims* – as the Supreme Court had been clear that "[w]hether a claimant must exhaust issues before the ALJ [was] not before [the Court]" in that case. *Id.* (quoting *Sims*, 530 U.S. at 107). The Tenth Circuit also observed that Justice O'Connor's concurrence had highlighted the fact that Appeals Council review is plenary and that "Appeals Council petition forms provide only three lines for claimants to specify the bases for appeal," unlike the more detailed regulations, including those cited above (*see* Discussion, *supra*, at Section I(B)), that require claimants to identify issues and objections prior to a hearing before the ALJ. *Id.* (citing *Sims*, 530 U.S. at 113-14 (O'Connor, J., concurring in part and concurring in judgment)). In addition, the Tenth Circuit concluded that it had been improper for the district court to rely on the inquisitorial nature of SSA proceedings where that rationale had been endorsed by only a plurality of the Supreme Court Justices in *Sims*, and not by Justice O'Connor. *Id.* at 1275. The Tenth Circuit went on to reason that, even if it were to accept that SSA hearings are inquisitorial, Appointments Clause challenges, themselves, are adversarial and, thus, a claimant has the responsibility to raise such a claim. *Id.* Lastly, the *Carr* court disagreed with the Third Circuit

that the SSA could not remedy an Appointments Clause violation, because such a challenge would put the SSA on notice of the need for a proper appointment, and the Appeals Council could vacate the decision of an unappointed ALJ.  *See id.*

Soon after *Carr*, the Eighth Circuit issued its decision in *Davis*, in which, like the Tenth Circuit, the court imposed an exhaustion requirement for Social Security claimants who seek to litigate Appointments Clause challenges.  *See Davis*, 963 F.3d at 794.  In considering whether to excuse a claimant's failure to raise an Appointments Clause claim before the SSA, the Eighth Circuit, from the outset, rejected the idea that constitutional claims deserve different treatment when it comes to forfeiture – a principle that had been recognized by pre-*Lucia* Eighth Circuit precedent.  *See id.* at 794 (citing *NLRB v. RELCO Locomotives, Inc*., 734 F.3d 764, 798 (8th Cir. 2013)).  The *Davis* court also rejected the contention that the SSA lacked the ability to remedy Appointments Clause challenges.  *Id.* at 794-95.  While accepting that it may be unlikely that the SSA would alter its system of review based on a single Appointments Clause challenge, the court in *Davis* reasoned that the timely objections of hundreds of SSA claimants could have prompted universal administrative action and thus generated a more efficient remedy.  *See id.*  Ultimately, the decision in *Davis* appears to have been greatly influenced by that court's concern about "the practicalities of potentially upsetting numerous administrative decisions because of an alleged appointment flaw to which the agency was not timely alerted."  *Id.* at 795.

Finally, and most recently, the Sixth Circuit in *Ramsey* sided with the Third Circuit to hold that the characteristics of the SSA's administrative scheme and the nature of Appointments Clause challenges weighed *against* implying an exhaustion requirement.  973 F.3d at 537.  After summarizing the decisions in *Sims*, the Sixth Circuit concluded that – under the reasoning of either Justice O'Connor's concurrence or the *Sims* plurality – an issue-exhaustion requirement

18

was inappropriate.  *See id.* at 542-45.  Starting with Justice O'Connor's approach, the Sixth

Circuit explained that "an implied exhaustion requirement is inappropriate because the [SSA's]

regulations provide no notice to claimants that their failure to raise an Appointments Clause

challenge at the ALJ level will preclude them from later seeking a judicial decision on the issue."

*Id.* at 543-44.  Turning then to the *Sims* plurality, the court in *Ramsey* stated that "the reasons the

*Sims* plurality rejected an issue-exhaustion requirement for Appeals Council hearings [would]

apply just as strongly to proceedings before an ALJ" because "[t]he analogy to normal

adversarial litigation remain[ed] at its weakest," given that an SSA administrative proceeding "is

inquisitorial rather than adversarial."  *Id.* at 544.  The Sixth Circuit rejected the Tenth Circuit's

assertion in *Carr* that Appointments Clause challenges are adversarial, noting that the

Commissioner had ratified all SSA ALJ appointments and that the SSA had decided "not to

contest the merits of claimants' Appointments Clause challenge" in that case "or in any similar

case."  *Id.*  Moreover, as to the claim in question, the Sixth Circuit noted that an "Appointments

Clause challenge involves neither an exercise of discretion, nor an issue within the [SSA's]

special expertise."  *Id.* at 545.  Thus, the *Ramsey* court agreed with *Cirko* that "'exhaustion is

generally inappropriate where a claim serves to vindicate structural constitutional claims like

Appointments Clause challenges, which implicate both individual constitutional rights and the

structural imperative of separation of powers.'"  *Id.* at 545-46 (quoting *Cirko*, 948 F.3d at 153

(citation omitted)).  Ultimately, the Sixth Circuit described its holding as "narrow" – "only that a

claimant does not forfeit an Appointments Clause challenge in a Social Security proceeding by

failing to raise that claim before the agency."  *Id.* at 547.  Thus, the court concluded, in *Ramsey*,

that the plaintiffs were entitled to new hearings before different ALJs.  *See id.*

Having considered these divergent outcomes, this Court is inclined to follow the

reasoning expressed by the Third and Sixth Circuits, and to find that Plaintiff has not forfeited

her Appointments Clause claim.  First, while neither the plurality decision in *Sims* nor Justice

O'Connor's concurrence expressly reached the precise issue presented here, the Supreme Court's

holding that "judicially created issue-exhaustion requirement is inappropriate" at the Appeals

Counsel level is instructive, *Sims*, 530 U.S. at 112; *see Cirko*, 948 F.3d at 155 ("while *Sims* does

not dictate the answer, its lessons loom large"), and, in light of the generally inapplicable SSA

statute and regulations, this Court disagrees with the Tenth Circuit that Justice O'Connor's

concurrence mandates the ALJ-level exhaustion for which Defendant advocates here.

Justice O'Connor wrote her *Sims* concurrence "separately because, in [her] view, the agency's

failure to notify claimants of an issue exhaustion requirement in this context [was] a sufficient

basis for [the Court's] decision."  *Sims*, 530 U.S. at 113 (O'Connor, J., concurring in part and

concurring in judgment).  As the Sixth Circuit and at least one other district court in this Circuit

have observed, the same reasoning can be applied here.  *See Ramsey*, 973 F.3d at 543-44;

*Blauvelt*, 2020 WL 4432911, at *5-6.

Justice O'Connor specifically noted that the SSA regulations "provide no notice that

claimants must . . . raise specific issues before the Appeals Council to reserve them for review in

federal court," *Sims*, 530 U.S. at 113 (O'Connor, J., concurring in part and concurring in

judgment), and it is equally true that those regulations provide no notice that claimants must raise

specific issues before the ALJ to ensure that they are not forfeited, *see, e.g., Blauvelt*, 2020 WL

4432911, at *5 ("the SSA regulations embody no requirement of issue exhaustion – either before

the ALJ or in the context of Appeals Council review").  In fact, as is the case for appeals to the

Appeals Council, the SSA regulations do not require claimants to state their case or present

20

written arguments during ALJ hearings. *See Cirko*, 948 F.3d at 156. Instead, as a general

matter, the SSA regulations "confirm agency-driven development of the issues." *Ramsey*, 973

F.3d at 544; *see, e.g.,* 20 C.F.R. §§ 404.944, 416.1444 (providing that ALJs must "look[] fully

into the issues," "[a]ccept[] as evidence any documents that are material to the issues," and

"decide when the evidence will be presented and when the issues will be discussed").[12] For

these reasons, this Court finds that Justice O'Connor's approach would not require exhaustion of

an Appointments Clause challenge before the ALJ, and would, in fact, support the opposite

conclusion.

Second, contrary to the Tenth Circuit's analysis in *Carr*, this Court finds that the

distinction between adversarial and inquisitorial proceedings discussed by the *Sims* plurality

should not be disregarded in the context of an Appointments Clause challenge. As explained by

another district court: the term "'adversarial' is used as a shorthand description of a system that

assigns primary responsibility for investigating and raising issues, be they factual or legal, to the

adversaries – the litigants – not the judge," while "'[i]nquisitorial' is a descriptor for a system in

which the judge, not the litigants, bears the primary responsibility for case development."

*Harold v. Saul*, No. 18-03994, 2019 WL 6003494, at *4 (E.D. Pa. Nov. 13, 2019) (citing *Sims*,

530 U.S. at 111 (plurality opinion), and finding the SSA's administrative scheme to weigh

against implying an exhaustion requirement). Accordingly, "the nature of the issue, whether

---

[12] As also noted in *Ramsey*, there is one provision in the regulations governing SSA ALJ hearings which states that a claimant "should" state "[t]he reasons [she] disagree[s] with the previous determination or decision" when requesting an initial hearing before an ALJ. *See Ramsey*, 973 F.3d at 544 (citing 20 C.F.R. § 416.1433(a)(3)); *see also* 20 C.F.R. § 404.933(a)(2). This Court is persuaded by the Sixth Circuit's reasoning that, "[a]lthough that regulation might provide greater justification for requiring issue exhaustion at the ALJ level of claims of error in the agency's initial decision, it is plainly not a directive requiring claimants to prospectively raise arguments about the constitutional inadequacy of an as-yet-unassigned ALJ's appointment." *Id*. *See also Brunson*, 2019 WL 3413520, at *5.

Constitutional or an ordinary fact issue, does not determine whether a system is 'adversarial' or not, as that term is used in *Sims*," *see id.* at *4, and "the identification of an Appointments Clause challenge does not transform an otherwise inquisitorial proceeding into an adversarial one." *Blauvelt*, 2020 WL 4432911, at *6.

In any event, any attempt to analogize SSA hearings to normal adversarial litigation cannot be easily squared with well-settled precedent in this Circuit, holding that SSA proceedings are fundamentally non-adversarial. *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996). SSA regulations make clear that "[i]n making a determination or decision in [a claimant's] case, [the SSA] conduct[s] the administrative review process in an informal, non-adversarial manner." 20 C.F.R. §§ 404.900(b), 416.1400(b).  Thus, "[i]t is the rule in [this] [C]ircuit that 'the ALJ, unlike a judge in a trial, must [her]self affirmatively develop the record' in light of 'the essentially non-adversarial nature of a benefits proceeding.'"  *Pratts*, 94 F.3d at 37 (quoting *Echevarria v. Sec'y of HHS*, 685 F.2d 751, 755 (2d Cir. 1982)); *see also Guillen v. Berryhill*, 697 F. App'x 107, 108 (2d Cir. 2017) (summary order) (same).  "[T]he reasons for a court to require issue exhaustion are [therefore] much weaker" in the SSA context.  *Sims*, 530 U.S. at 110.

Furthermore, this Court is not convinced that the traditional justifications put forward by the Tenth Circuit, in favor of requiring issue exhaustion, apply to Appointments Clause challenges to SSA ALJs.  The *Carr* court stated that exhaustion furthered two main institutional interests:  first, the ability for agencies to correct their own mistakes, and, second, the promotion of judicial efficiency and expediency.  *See Carr*, 961 F.3d at 1271.  The Eighth Circuit relied on similar reasoning.  *See Davis*, 963 F.3d at 793-94.  These factors, though, are not compelling here.

To start, with regard to the SSA's ability to correct its own mistakes (the "error-correction" theory) – the SSA's actions during the *Lucia* appeal and in the wake of the *Lucia* decision undermine that theory.  On January 30, 2018, while *Lucia* remained pending – and while the decision of the ALJ in Plaintiff's case here also remained pending – the SSA released Emergency Message EM-18003, directing "ALJs to acknowledge Appointments Clause arguments raised in connection with the appeal of an administrative action without discussing or making any findings on any such arguments."  Soc. Sec. Admin., EM-18003: Important Information Regarding Possible Challenges to the Appointment of Administrative Law Judges in SSA's Administrative Process (effective Jan. 30, 2018).  The guidance further stated that SSA ALJs "do not have the authority to rule on" Appointments Clause challenges, and "[a]s challenges of the constitutionality of the appointment of SSA's ALJs [were] outside the purview of the administrative adjudication," even "the [Appeals Council] [would] *not* acknowledge, make findings related to, or otherwise discuss the Appointments Clause issue" during a challenge made at the Appeals Council level.  *Id.* (emphasis in original).

Similarly, updated guidance by the SSA, dated June 25, 2018, stated that both SSA ALJs and the Appeals Council lacked authority to consider Appointments Clause challenges, and would not discuss or make findings regarding such challenges.  *See* Soc. Sec. Admin., EM-18003 REV: Important Information Regarding Possible Challenges to the Appointment of Administrative Law Judges in SSA's Administrative Process – UPDATE (effective June 25, 2018).  Thus, as of the time that the ALJ issued his decision in this case, the agency itself had taken the position that Appointments Clause challenges fell well "outside [its] competence and expertise."  *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 491 (2010).[13]

---

[13] As "agencies, not the courts, ought to have primary responsibility for the programs that

Although the agency then revised its guidance yet again, on August 6, 2018 – instructing the Appeals Council to evaluate Appointments Clause challenges timely raised in requests for review, including those predating the Acting Commissioner's post-*Lucia* ratification of the appointments of its ALJs[14] – Plaintiff, by that time, had already received a letter from the Appeals Council dated June 18, 2018, stating that she had 25 days (*i.e.*, until July 13, 2018) to update the Appeals Council with additional information, which could not be extended "except for very good reasons." (R. 7-8; *see Filippo*, 2020 WL 5229681, at *6 (discussing similar circumstances).)  This timeline matters, as it suggests that, at the time of Plaintiff's Hearing, and even at the time of her appeal (where, under *Sims*, she was not required to exhaust her

---

Congress has charged them to administer[,] [e]xhaustion concerns apply with particular force when the action under review involves the exercise of the agency's discretionary power or when the agency proceedings in question allow the agency to apply its special expertise." *McCarthy*, 503 U.S. at 145.  This rationale explains why the circuit courts in many of the cases cited by Defendant concluded that issues within the agency's expertise were forfeited when not raised during administrative proceedings.  For example, in *Maloney v. Comm'r of Soc. Sec.*, 480 F. App'x 804 (6th Cir. 2012) (cited in Def. Mem., at 31 n.6), the Sixth Circuit held that a claimant "ha[d] waived any argument stemming from the exclusion of [claimant's sister-in-law's testimony]" because the claimant failed to raise that issue before the Appeals Council.  *Id.* at 810.  Likewise, in *Anderson v. Barnhart*, 344 F.3d 809 (8th Cir. 2003) (cited in Def. Mem., at 31 n.6), the Eighth Circuit held that a claimant waived the argument that the ALJ failed to consider the claimant's obesity as an impairment because "[the claimant] never alleged any limitation in function as a result of his obesity in his application for benefits or during the hearing."  *Id.* at 814.  Also, in *Shaibi v. Berryhill*, 883 F.3d 1102 (9th Cir. 2017) (cited in Def. Mem., at 31 n.6), the Ninth Circuit held that a claimant could not challenge a vocational expert's testimony by trying to introduce new evidence for the first time in the district court to rebut that testimony, at least when the claimant was represented by counsel.  *Id.* at 1109.  And lastly, in *Mills v. Apfel*, 244 F.3d 1 (1st Cir. 2001) (cited in Def. Mem., at 31), the First Circuit did not allow a claimant to argue in court that the ALJ erred by improperly applying a certain regulation because the claimant had not made the argument to the ALJ or the Appeals Council.  *Id.* at 8-9.  As noted above, these cases are all distinguishable from the facts here because an Appointments Clause challenge, as a constitutional claim, falls "outside the [SSA's] competence and expertise."  *Free Enter. Fund*, 561 U.S. at 491; *see also Brunson*, 2019 WL 3413520, at *6.

[14] *See* Soc. Sec. Admin., EM-18003 REV 2: Important Information Regarding Possible Challenges to the Appointment of Administrative Law Judges in SSA's Administrative Process – UPDATE (effective Aug. 6, 2018).

Appointments Clause claim), the SSA was itself of the view that it could not have addressed her constitutional claim.

A court need not give an administrative agency the opportunity for error correction where the agency is not "empowered to grant effective relief," *McCarthy*, 503 U.S. at 147 (internal quotation marks and citation omitted), and where, as a result, the claimant's raising of the error administratively would not have furthered the institutional interests of judicial or agency efficiency.  At least in this case, Plaintiff should not be held to have forfeited her constitutional claim by failing to raise it before the ALJ, at a time when, according to the SSA, the ALJ would not have been able to address or correct the error.  *See Cirko*, 948 F.3d at 158 ("At neither the trial nor the appellate levels could the SSA's [ALJs] cure the constitutionality of their own appointments, whether by reappointing themselves . . . or by transferring the case to a constitutionally appointed ALJ[.]" (citations omitted)); *see also Santos-Buch v. Fin. Indus. Regulatory Auth., Inc.*, 591 F. App'x 32, 33 (2d Cir. 2015) (summary order) ("Exhaustion is not required . . . when an agency lacks the power to grant effective relief, including when the agency would be called upon to resolve a substantial constitutional issue. (citation omitted)).

Ultimately, looking outside of *Sims* and beyond the relevant institutional justifications, "'[e]ven if the Court were to determine that exhaustion . . . would ordinarily be required,'" the Court, in this particular circumstance, "'would waive it on the basis of futility'" because the SSA "'was not ruling on Appointments Clause challenges per the SSA's own guidance[, but] was fully aware of the constitutional problem." *Filippo*, 2020 WL 5229681, at *5 (quoting *Blauvelt*, 2020 WL 4432911, at *7).[15]

---

[15] In holding that Appointments Clause challenges not raised before the SEC are forfeited, the Second Circuit in *Gonnella* rejected the appellant's argument that exhaustion would have been futile, reasoning that "the SEC . . . was in a position to provide meaningful

In sum, the Supreme Court held, in *Lucia*, that the SEC's ALJs are inferior officers who must be appointed consistently with the Appointments Clause.  *Lucia*, 138 S. Ct. 2047.  Defendant has not contested the merits of Plaintiff's argument that the ALJ who presided over the Hearing and issued the decision on her disability benefits claims was required to be, but was not, appointed consistently with the Appointments Clause.  The only issue for this Court is whether Plaintiff should have been required, by the discretionary imposition of judicial doctrine, to have raised her Appointments Clause argument before the ALJ, in order to preserve it for judicial review.  For the reasons discussed above, the Court declines to impose such an issue-exhaustion requirement in this case.  Thus, under *Lucia*, Plaintiff is entitled to a new hearing before a properly appointed ALJ other than the ALJ who conducted the Hearing.

## II.      PLAINTIFF'S REMAINING ARGUMENTS

As the Court has found that, under *Lucia*, Plaintiff is entitled to a new hearing before a properly appointed ALJ, the remaining arguments raised by Plaintiff should not be addressed at this time.  *See, e.g., Filippo*, 2020 WL 5229681, at *6 (not addressing remaining arguments where remand was ordered for a new hearing before a properly appointed ALJ).  Nothing herein is intended to foreclose Plaintiff from reasserting any of those arguments at a later juncture, if, upon remand, she is again denied benefits on grounds akin to those stated by ALJ Cascio.

## CONCLUSION

For all of the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 18) is granted to the extent it seeks remand for a new hearing before a different ALJ who

---

review."  *Id.* at 545-46.  As discussed at length here (*see* Discussion, *supra*, at Section I(C)), the same logic cannot hold in the context of SSA administrative proceedings.

has been properly appointed pursuant to the Appointments Clause of the United States

Constitution, and Defendant's cross-motion for judgment on the pleadings (Dkt. 25) is denied.

In light of this Order, the Clerk of Court is directed to close Plaintiff's motion for

judgment on the pleadings (filed at Dkt. 18, although incorrectly reflected on the Docket as

Dkt. 17 (*see supra*, at n.2)), as well as Defendant's cross-motion (filed at Dkt. 25), on the Docket

of this action, and to enter judgment in Plaintiff's favor, directing remand.

Dated:  New York, New York
        November 23, 2020

                                        SO ORDERED


                                        _____
                                        DEBRA FREEMAN
                                        United States Magistrate Judge


Copies to:

All counsel (via ECF)

27